UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                  :

MICHAEL MAROM,                        :
                                    :
                  Plaintiff,         :     13-cv-4733 (NSR)
       -against-                    :
                                    :     OPINION AND ORDER
TOWN OF GREENBURGH, JOSEPH DECARLO, :
CHRIS MCNERNEY, JOHN HERIGHTY, KEIRA :
KNOESEL, GEBE GOUVEIA, MARK GORDON, :
AUDREY PIEROT, DEBORAH SALERNO,     :
ROCCO SALERNO and THE ESTATE OF      :
STEVE BELASCO,                       :
                                    :
                 Defendants.       :
------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

        Plaintiff Michael Marom ("Plaintiff") commenced this action against defendants Town of

Greenburgh (the "Town"), Joseph Decarlo, Chris McNerney (named as "Chris McNurney"),

John Herighty, Keira Knoesel, Gabe Gouveia (named as "Gebe Gouveia"), Mark Gordon,

Audrey Pierot, Deborah Salerno, Rocco Salerno, and the Estate of Steve Belasco, by complaint

filed July 9, 2013 and amended November 1, 2013 (dkt. no. 11).  On July 15, 2014, Plaintiff

voluntarily dismissed the action with prejudice as against defendants Gordon and Pierot.  *See*

dkt. no. 98.  All other defendants remain in the action and now move to dismiss certain claims

pursuant to Federal Rule of Civil Procedure 12(b)(6), and in the case of two claims, pursuant to

Rule 12(c).  All pending motions are consolidated for purposes of this opinion and order.  The

Court GRANTS the motions in part, and DENIES them in part, for the reasons stated below.

## I. AMENDED COMPLAINT

        The Town is a municipality.  Joseph Decarlo, Chris McNerney, John Herighty, and Keira

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/23/2015

Knoesel are Town police officers of varying rank.  Gabe Gouveia is a Town code enforcement officer.  Mark Gordon and Audrey Pierot are private citizens who owned or occupied a piece of real property adjacent to property that was of concern to Plaintiff, as discussed below.  Deborah and Rocco Salerno are private citizens who encountered Plaintiff at a town hall meeting, as discussed below.  The late Steve Belasco is the former chairman of the Town's Zoning Board of Appeals ("ZBA").  The individual defendants will be referred to by last name in this opinion where appropriate for ease of reference.

The complaint asserts fifteen causes of action, which will be addressed seriatim below. The pleading is scattershot, but the Court is mindful that *pro se* complaints must be construed leniently to raise the strongest claims they suggest.  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006).

In summary, Plaintiff contends that on February 16, 2012, in the Greenburgh town hall lobby, defendant Deborah Salerno attacked him with a shoe.  Amended Complaint ("Compl.") (dkt. no. 11) ¶ 1.  Although later conceding that he slapped Salerno in response, Plaintiff contends that she and her husband, defendant Rocco Salerno, falsely accused Plaintiff of assault. *Id.* ¶ 2.  The police were called, and ultimately, Plaintiff was charged with third-degree assault. *Id.* ¶¶ 11-13.  The complaint indicates that the prosecution concluded with an acquittal, *id.* ¶ 76, and defendants do not dispute this.

Plaintiff alleges that certain defendants collaborated with the police to suppress evidence and to discriminate against Plaintiff in connection with his arrest and the charges.  *Id.* ¶ 10.  In support of a false arrest claim, he contends there was no probable cause for his arrest, and in the alternative, that the probable cause to arrest him was "no greater than the probable cause for arresting Deborah Salerno."  *Id.* ¶¶ 12-13.  For damages, Plaintiff contends he "suffered mental,

emotional despair and anguish," having been paraded before the public on nightly news after his false arrest. *Id.* ¶ 15.

More broadly, Plaintiff contends that his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments were violated. *Id.* In addition to false arrest, he asserts malicious prosecution, and he alleges that the arresting police officers refused to take his or his wife's eyewitness statements. *Id.* ¶ 20. He alleges that the officers referred the matter for prosecution without viewing a videotape of the incident. *Id.* ¶¶ 22-26.

He also claims negligence, predicated on unconstitutional police "patterns and practices." *Id.* ¶ 30. As one example, he contends the police refrained from investigating Plaintiff's complaints over the last three years (2011 to 2013) concerning vandalism on real property at 201 South Healy Avenue (a/k/a 11 Elizabeth Street) in Greenburgh. *Id.* ¶¶ 30-32. Plaintiff also resurrects a grievance from "years ago," relating to summonses that code enforcement officer Gabe Gouveia issued on that property. *Id.* ¶¶ 40-41.

Plaintiff further alleges that in 2010, a police captain, Chris McNerney, failed to investigate some sort of insurance fraud involving downed power lines which implicated former defendants Gordon and Pierot. *Id.* ¶¶ 47-51. Gordon and Pierot own or occupy a property adjacent to the Elizabeth Street lot, and apparently clashed with Plaintiff over real property rights. In particular, the use of a driveway that runs between the two properties was in dispute.

Returning to 2012, Plaintiff asserts "illegal towing from private property" on the part of the Town and officer Joseph Decarlo, after Plaintiff's vehicle tires were slashed on February 18, 2012, two days after the incident at town hall. *Id.* ¶¶ 55-60. Plaintiff also asserts a claim for trespass onto private property against Decarlo and the Town. *Id.* ¶¶ 62-66.

Referencing apparently unrelated events in 2011, 2012, and 2013, Plaintiff claims

discrimination and equal protection violations by police, including by officers Decarlo and McNerney. *Id.* ¶¶ 68-72, 74-80.  Plaintiff again cites a pattern of ignoring his complaints from 2011 to 2013, most of which involved vandalism, *id.* ¶ 78, and Plaintiff attributes the purported discrimination to his national origin and possibly his religion, *id.* ¶ 80.

Referencing events in 1994, 2009, and 2011, Plaintiff reasserts negligence, and he also pleads "bad faith" and "unfair tax assessments" by the Town and ZBA chairman Steve Belasco, whose estate is named as a defendant.  *See id.* ¶¶ 82 *et seq.*  These final grievances are rooted in the Town's denial of a zoning variance for the Elizabeth Street property (a decision later reversed after Article 78 litigation), and in the Town's subdivision of, tax assessments on, and school district delineation for, the Elizabeth Street property.  *See id.*

## II. MOTION TO DISMISS STANDARD

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.

When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* A claim is facially plausible when the factual content pleaded allows a court "to draw a

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. CLAIMS AND DEFENSES

#### A.  Claim One – False Arrest

Plaintiff asserts a false arrest claim against the Town, officers Herighty and Knoesel, and Deborah and Rocco Salerno.  A false arrest claim requires that a defendant, while acting under color of state law, confined the plaintiff without his consent and that such confinement was not otherwise privileged. *Singer v. Fulton Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).[1]  An arrest is privileged if probable cause to arrest existed under applicable state law. *Dunaway v. New York*, 442 U.S. 200, 208 n. 9 (1979); *see also Boyd*, 336 F.3d at 75.

The complaint does not contain any factual allegations suggesting that Deborah and Rocco Salerno were acting under color of state law in connection with Plaintiff's February 16, 2012 arrest at the Greenburgh town hall.  The complaint alleges, rather, that the Salernos were private parties who reported the town hall incident to the police.  The Salernos therefore move to dismiss the false arrest claim against them for lack of well-pleaded state action. *See San Filippo v. U.S. Trust*, 737 F.2d 246, 256 (2d Cir. 1984) ("a private party giving testimony is not 'acting under color of state law'").  Their motion is granted on that basis.

The Salernos also argue that Plaintiff concedes that he slapped Deborah Salerno, and further concedes that probable cause to arrest Plaintiff existed, insofar as the complaint compares

---

[1] *See also Boyd v. City of New York*, 336 F.3d 72, 76 n. 6 (2d Cir. 2003) ("The elements of false arrest and malicious prosecution under § 1983 are 'substantially the same' as the elements under New York law. Therefore, the analysis of the state and the federal claims is identical.") (internal quotation omitted).

such probable cause to the probable cause that existed to arrest Deborah Salerno.  A concession

regarding probable cause to arrest Plaintiff would undercut the false arrest claim as well.  *Curly*

*v. Village of Suffferen*, 268 F.3d 65, 70 (2d Cir. 2001) ("no federal civil rights claim for false

arrest can exist where the arresting officer had probable cause").  On a motion to dismiss,

however, the Court must draw reasonable inferences in Plaintiff's favor, and, as noted, pleadings

from *pro se* litigants are construed leniently.  *Boddie v. Schieder*, 105 F.3d 857, 860 (2d Cir.

1997).  Generously read, the complaint asserts, at least in the first instance, an absence of

probable cause to arrest Plaintiff for assault.  *See, e.g.*, Compl. ¶ 2 ("I was defending myself and

my wife . . . .").  This contention raises factual questions about what exactly transpired at town

hall which are inappropriate for resolution on a motion to dismiss.  The Court thus declines to

grant the Salerno's motion on grounds that the allegations concede the existence of probable

cause.

      The Town and officers Herighty and Knoesel do not challenge the state action allegations

against them.  Nor do they move to dismiss the false arrest claim based on concessions in the

complaint regarding probable cause.  The Town does not move to dismiss the false arrest claim

at all, while Herighty and Knoesel move to dismiss it only in part—they argue that the

conspiracy aspect of the claim is barred by the res judicata effect of the voluntary dismissal

against Gordon and Pierot.  Gordon and Pierot, the neighboring property owners, were named in

claim one until the voluntary dismissal.

      Dismissal with prejudice against Gordon and Pierot "has the effect of a final adjudication

on the merits favorable" to those defendants and "bars future suits upon the same cause of

action."  *Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986).  In fact, this res judicata principle

bars not only future suits, but also further litigation in the same suit of "relevant issues which

could have been but were not raised" by whatever claims were dismissed.  *Id.* at 61; *see also*

*NBC Broadcasting, Inc. v. Sheridan Broadcasting Networks, Inc.*, 105 F.3d 72, 78 (2d Cir. 1997)

(discontinuance with prejudice bars claims asserted or which could have been asserted in the

discontinued action).  The issues need only fall within the operative facts and controversy

underlying the dismissed claims.  *See NBC Broadcasting, Inc.*, 105 F.3d at 78.  Res judicata

applies even as to claims or issues concerning a new or different defendant, based on the

principle of privity, "where the new defendant has a sufficiently close relationship to the original

defendant to justify preclusion."  *See Central Hudson Gas & Electric Corp. v. Empresa Naviera*

*Santa S.A.*, 56 F.3d 359, 367-68 (2d Cir. 1995).

Plaintiff's false arrest claim asserts conspiracy between Gordon and Pierot, on one hand,

and the police defendants and the Town, on the other.  *See* Compl. ¶ 10 ("Town of Greenburgh

police department and the defending actors[2] collaborated in the false arrest event and engaged in

a joint venture to suppress evidences and discrimination [sic] against the plaintiff in order to

justify an arrest.").  By asserting joint venture and concerted action, the complaint concedes

privity and, to the extent of any conspiracy, concedes the absence of distinct factual allegations

concerning individual conspirators.  *See NBC Broadcasting, Inc.*, 105 F.3d at 78 (issue or claim

preclusion requires a "natural grouping or common nucleus of operative facts"); *see also*

*Nabisco, Inc. v. Amtech Intl., Inc.*, 95-cv-9699, 2000 U.S. Dist. LEXIS 305, at *18 (S.D.N.Y.

Jan. 18, 2000) ("Contemporary courts have broadly construed the concept of privity, far beyond

its literal and historical meaning, to include any situation in which the 'relationship between the

parties is sufficiently close to support preclusion.'" (quoting *Amalgamated Sugar Co., LLC v. NL*

---

[2] Read together with other allegations in the complaint, references to the "actors," are references to former
defendants Gordon and Pierot.

*Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987)).  As such, although Plaintiff may not have foreseen the collateral effect of the voluntary dismissal order, that order operates to bar the false arrest claim against Herighty and Knoesel to the extent predicated on conspiracy.  Herighty and Knoesel's motion to dismiss this claim in part is therefore granted.  Because the allegations in the complaint are such that the Town's liability could only be vicarious,[3] although the Town does not so move, the Court also dismisses the false arrest claim against the Town to the extent that the claim is predicated on conspiracy.  *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978).  The balance of claim one—i.e., those allegations not sounding in conspiracy and arguably involving discrete factual nuclei—proceeds against Herighty, Knoesel, and the Town.

### B.  Claim Two – Malicious Prosecution

Plaintiff asserts a malicious prosecution claim against the Town, officers DeCarlo, McNerney, Herighty, and Knoesel, and Deborah and Rocco Salerno.  Gordon and Pierot were named on this claim as well, before the voluntary dismissal order.  "To establish a malicious prosecution claim, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted).

As with false arrest, this claim fails against Deborah and Rocco Salerno for lack of well-pleaded state action—there is no allegation that they, as private parties, initiated or continued the criminal proceeding against Plaintiff.  *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 946 (1982).

---

[3] The complaint lacks any well-pleaded allegation that constitutional deprivations occurred pursuant to official municipal policy.  Consequently, there is no viable action directly against the Town.  *Monell*, 436 U.S. at 690.

With respect to the police defendants, although there is apparent state action, there is no assertion that officers Decarlo or McNerney forwarded false information to the Westchester County District Attorney or otherwise caused the initiation of criminal charges.  The complaint's silence in that regard is fatal to the malicious prosecution claim against Decarlo and McNerney.  *Brome v. City of New York*, 02-cv-7184, 2004 U.S. Dist. LEXIS 3943, at *17 (S.D.N.Y. Mar. 15, 2014) ("there is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding," overcome only by allegations and evidence that a police officer forwarded false information to the prosecutor).  Their motion to dismiss this claim is granted on that basis.

 For officers Herighty and Knoesel and the Town, Plaintiff reasserts a conspiracy allegation in claim two.  *See* Compl. ¶ 26 ("Police acted under the color of law collaborated and conspire with the Actors in order to cause false prosecution . . . .").  Consistent with the analysis above, voluntary dismissal with prejudice against Gordon and Pierot bars this claim against Herighty, Knoesel, and the Town, to the extent predicated on conspiracy.  *Central Hudson Gas & Electric Corp.*, 56 F.3d at 366-67.  Herighty and Knoesel's motion to dismiss on that basis is granted, and the Court grants the Town the same relief even though it did not so move.  The balance of claim two—i.e., those allegations not sounding in conspiracy and arguably involving discrete factual nuclei—proceeds against Herighty, Knoesel, and the Town.

### C.  Claim Three – Police Misconduct or Negligence Under 42 U.S.C. § 14141

Plaintiff asserts a statutory claim against the Town, officer McNerney, and unnamed "arresting officers," based on a "pattern or practice" of not investigating Plaintiff's complaints concerning vandalism at the Elizabeth Street property.  Compl. ¶ 30.  The allegations for this claim mention officer Decarlo, who purportedly "refrained from canvassing the immediate

neighbors following [the] vandalism." *Id.* ¶ 32.  Plaintiff contends that the pattern or practice of police misconduct violated his constitutional or legal rights, and he cites the Violent Crime Control and Law Enforcement Act ("VCCLEA"), 42 U.S.C. § 14141.  *Id.* ¶ 30.

The VCCLEA provides that it "shall be unlawful for any governmental authority . . . to engage in a pattern or practice of conduct by a law enforcement officer . . . that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.  42 U.S.C. § 14141(a).  The statute confers exclusive enforcement authority on the Attorney General, however.  *See id.* § 14141(b).  There is no private right of action.  *Miller v. Carpinello*, 06-cv-12940, 2007 U.S. Dist. LEXIS 86395, at *16 (S.D.N.Y. Nov. 19, 2007).

Additionally, even applying the ulterior lens of 42 U.S.C. § 1983 to Plaintiff's third claim, any constitutional right violated would appear to be grounded in the Due Process Clause of the Fourteenth Amendment.  But the gravamen of claim three is that the police did not redress third-party vandalism, and "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989).

For both of these reasons, the Court grants Decarlo and McNerney's motion to dismiss claim three.  Because there is no private right of action or facial merit to this claim, and because the Town's liability could only be vicarious, the Court also dismisses claim three against the Town.  Insofar as claim three purports to name other "arresting officers," the claim is dismissed against them as well.

### D.  Claim Four – Malicious Prosecution

At claim four, Plaintiff reasserts malicious prosecution against the Town and Gouveia.  Allegedly, "years ago," Gouveia issued Plaintiff seven summonses for "storing garbage can on

his private property [sic]" at Elizabeth Street.  Compl. ¶¶ 40, 41.  Gouveia did so "for no apparent legal reason," and while acting under color of state law.  *Id.* ¶¶ 41, 42.  Plaintiff contends Gouveia had no jurisdiction or legal standing to issue the summonses.  *Id.* ¶ 41. Plaintiff also alleges that Gouveia conspired with former defendants Gordon and Pierot "to issue summonses for the only reason of depriving plaintiff from [sic] his civil rights . . . in order to gratify Ms. Pierot."  *Id.* ¶¶ 42, 43.

The Town and Gouveia move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c),[4] seeking dismissal of this claim on grounds of qualified immunity. Enclosed with the motion are the summonses that issued and certain photographs said to have been taken by Gouveia at the time of issuance.  The Court considers only the former—the summonses—and not the photographs, in rendering this decision.  The summonses are integral to and incorporated by reference in the complaint, whereas the photographs are not.  *Byrd v. City of New York*, 04-cv-1396, 2005 U.S. App. LEXIS 10820, at *2-3 (2d Cir. June 8, 2005) ("As with Rule 12(b)(6) motions, Rule 12(c) motions generally are limited to the facts alleged in the complaint," although the court may "consider documents that are attached to, incorporated by reference in, or integral to, the complaint," and matters subject to judicial notice.).

Adding to their qualified immunity arguments, the Town and Gouveia assert that Plaintiff lacks standing to bring this claim, since the summonses were issued to corporate property owner, M.M. Telecom Corp., and not to Plaintiff.  This is evident from the face of the summonses, they point out.  The Town and Gouveia also argue that Plaintiff's voluntary dismissal against Gordon and Pierot bars claim four against the Town and Gouveia, at least insofar as the claim is based on

---

[4] "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."  *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

conspiracy.

Taking these arguments in reverse order, as above, this claim is dismissed to the extent predicated on alleged conspiracy with Gordon and Pierot, based on the res judicata effect of the prior voluntary dismissal order. *Central Hudson Gas & Electric Corp.*, 56 F.3d at 366-67. The Court also dismisses claim four entirely, on standing grounds. Plaintiff has pleaded nothing suggesting he has an ownership stake in M.M. Telecom Corp., the entity to which the summonses issued, or otherwise suggesting that Plaintiff is the real party in interest here. Instead, the Court takes judicial notice of court filings submitted by the Town and co-defendant Estate of Steve Belasco,[5] which establish that Plaintiff is the president of M.M. Telecom Corp. and do not otherwise demonstrate that Plaintiff has standing to sue in his individual capacity for purported wrong done the corporate property owner. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (Article III standing requires that a party "suffered an injury in fact . . . fairly trace[able] to the challenged action of the defendant"); *see also Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22-23 (2d Cir. 1983) (only a licensed attorney may litigate in federal court on behalf of a corporation).

The Court also grants the Town and Gouveia's motion on grounds of qualified immunity. Qualified immunity protects individual government actors performing "discretionary functions." *Simons v. Fitzgerald*, 287 Fed. App'x 924, 926 (2d Cir. 2008). These actors are shielded from civil liability if their "conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. Cnty. of Suffolk*, 316 F. 3d 368, 385 (2d Cir. 2003).

---

[5] *See* Town and Estate of Late Steve Belasco Memorandum in Support of Motion to Dismiss ("Town & Belasco Mem.") (dkt. no. 69) Ex. A, B.

The complaint does not contain any well-pleaded allegation that Gouveia violated a clearly established constitutional right afforded Plaintiff.  The complaint concedes, rather, that debris was placed in a right of way and not immediately cleared.  *See* Compl. ¶ 40 (debris and other materials stored in garbage cans along a driveway).  Plaintiff has no well-founded right to avoid citation for town code violations prohibiting such activity.  *See, e.g.*, Greenburgh Town Code § 430-9A (shall not obstruct first five feet of shoulder or sidewalk area of any public right-of-way).  Additionally, comparing the allegations in claim four to the Greenburgh Town Code provisions noted on the face of the summonses, Gouveia very apparently had probable cause to cite Plaintiff, and Plaintiff does not challenge this.  *Cf. Mangino v. Inc. Vill. of Patchogue*, 814 F. Supp. 2d 242, 247 (E.D.N.Y. 2011) (granting qualified immunity to code enforcement officers who issued tickets based on probable cause of town code violations); *Serbalik v. Gray*, 27 F. Supp. 2d 127, 133-34 (N.D.N.Y. 1998) (same).  Plaintiff's grievance appears to be, rather, that Gouveia abused his discretion in targeting Plaintiff for citation, and yet that is precisely the sort of discretionary government function which qualified immunity protects.  Thus, on three independent bases, the Court grants the Rule 12(c) motion and dismisses claim four.

### E.  Claim Six – "Conspiracy to Aid and Abate [sic] Insurance Fraud"[6]

Plaintiff asserts an insurance fraud conspiracy claim against officer McNerney and the Town.  Gordon and Pierot were named as defendants on this claim until the voluntary dismissal order.  In sum, Plaintiff alleges that in or about July 2011, Plaintiff filed a complaint with the police department asserting insurance fraud against property owners Gordon and Pierot, but the police department ignored the complaint.  Compl. ¶ 49.  Plaintiff contends that McNerney

---

[6] The claims in the complaint are incorrectly numbered, omitting claim five, such that the next claim in sequence is claim six.

refused to conduct any investigation or to refer the matter for prosecution.  *Id.* ¶ 51.

Although McNerney did not assert res judicata, Plaintiff's voluntary dismissal against Gordon and Pierot bars this claim to the extent predicated on conspiracy.  *Central Hudson Gas & Electric Corp.*, 56 F.3d at 366-67.  The claim also fails because, on its face, it does not pass constitutional muster—"the Due Process Clause generally confers no affirmative right to governmental aid."  *Deshaney*, 489 U.S. at 196.  The Court therefore grants McNerney's motion to dismiss this claim, and, because any liability on the Town's part would be vicarious, the Court also dismisses the claim as against the Town.

### F.  Claim Seven – Illegal Towing from Private Property

With this claim against the Town and officer Decarlo, Plaintiff alleges that after his vehicle tires were slashed on February 18, 2012, he positioned the vehicle on a car jack on a driveway.  Compl. ¶¶ 56-57.  This was the disputed driveway that runs between the Elizabeth Street property and Gordon and Pierot's adjacent property.  Plaintiff contends that an emergency vehicle could pass alongside the vehicle on the jack if need be, but that police officers nevertheless had the vehicle towed "to appease" Gordon and Pierot.  *Id.* ¶ 60.

This claim names the Town and Decarlo as defendants, and yet there is no allegation that Decarlo directly, or indirectly for that matter, participated in or caused the towing.  Basic pleading standards and Section 1983 require an allegation of direct participation in unconstitutional activities.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977) (same).  Because there is no allegation that Decarlo was personally involved in the towing, the Court grants his motion and dismisses claim seven as against Decarlo.  Because any liability on the

Town's part would be vicarious, and because there is no well-pleaded allegation of Town employee malfeasance, the Court dismisses claim seven as against the Town.

### G.  Claim Eight – Entering Private Property Without Court Order

Plaintiff asserts an additional claim against the Town and Decarlo alleging that on or about February 21, 2012, after Plaintiff violated a civil court order from 2011 restricting parking on the disputed driveway, two police officers burst through the door of Plaintiff's home without his consent.  Compl. ¶ 63.  As with claim seven, however, there is no allegation that Decarlo had any direct involvement in this incident.  Nor, for that matter, does the complaint specify any other defendant who was involved, aside from vitriolic references to former defendants Gordon and Pierot.  The eighth claim is therefore dismissed as against both Decarlo and the Town.

### H.  Claim Nine – Equal Protection

Plaintiff next asserts an equal protection claim against the Town, Decarlo, and McNerney.  He alleges that on numerous occasions following the 2011 civil court order restricting parking on the driveway, Gordon and Pierot violated the order while parking there. *Id.* ¶¶ 69-70.  Plaintiff contends he summoned the police to enforce the court order, and they "sent one officer who just filed the report for 'documentation only'" and who said the police do not enforce civil court orders.  *Id.* ¶ 71.  When Plaintiff parked on private property across the street from the driveway on April 17, 2013, however, McNerney and three detectives responded, threatened to arrest Plaintiff, and demanded that he move his vehicle.  *Id.*  This, the complaint alleges, amounts to systematic denial of Plaintiff's right to equal protection, and signifies collaboration and conspiracy with Gordon and Pierot.  *Id.* ¶ 72.

This claim too is barred by res judicata, and therefore dismissed, to the extent predicated on conspiracy.  The claim also is dismissed as against Decarlo because there is no allegation that

he was even involved with the April 17, 2013 incident.

With respect to McNerney, to assert an equal protection claim, a plaintiff must plead (1) adverse treatment "compared with similarly situated individuals," and (2) "that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Miner v. Clinton Cnty.*, 541 F.3d 464, 474 (2d Cir. 2008).  If the plaintiff is not a member of a protected class, a "class of one" equal protection claim requires that (1) he was treated differently from others similarly situated in all relevant respects, (2) the defendant had no rational basis for the different treatment, and (3) the different treatment resulted from a non-discretionary state action.  *Enquist v. Oregon Dept. of Agric.*, 553 U.S. 591, 604 (2008).

Here, Plaintiff has not identified any protected class of which he was a member.  Even if he had pleaded as much, the assertions in the complaint concerning selective treatment and bad faith intent are speculative and conclusory.  The allegations also do not support a class of one claim.  The crux of the grievance here is that when Gordon and Pierot violated a court order relating to parking on certain disputed property, one officer responded, whereas four officers responded on a different occasion when Plaintiff parked on private property across the street. Even accepting these allegations as true, the incidents and parties involved are not "similarly situated in all respects."  The two incidents occurred in different locations, at different times, on different private lots.  It also is unclear whether any action taken by police officers was non-discretionary; the complaint is silent on that point.  For all these reasons, the Court grants McNerney's motion to dismiss this claim.  The Court also dismisses the claim as against the Town.

## I.   Claim Ten – Discrimination

The complaint next asserts a "discrimination" claim against the Town and officers Decarlo and McNerney.  Plaintiff alleges that:  (a) "the police" declined to take action in April 2012 when Plaintiff filed a complaint accusing Deborah Salerno of provoking the town hall assault, and that the police likewise failed to act in July 2013 when Plaintiff was acquitted of criminal charges; and (b) the police demonstrated a pattern of ignoring Plaintiff's complaints about vandalism on the Elizabeth Street property.  *See* Compl. ¶¶ 75-78.  All of this, Plaintiff contends, was discriminatory conduct based on "national origin . . . accented control of the English language and possible [sic] my affiliated religion."  *Id.* ¶ 80.

This claim fails, and is dismissed, for a few reasons.  First, Plaintiff does not specify any direct participation by individual defendants Decarlo or McNerney in the purported constitutional violations.  *Colon*, 58 F.3d at 873; *McKinnon*, 568 F.2d at 934.  Second, the assertions concerning alleged discriminatory motive or action are vague and conclusory.  As with claim nine, this claim does not identify the protected class of which Plaintiff supposedly is a member, and the claim does not contain *factual* allegations suggesting that any individual defendant took action based on impermissible considerations.  *Miner*, 541 F.3d at 474.  The claim also does not attempt to contrast Plaintiff's treatment with that of similarly situated individuals.  Third, to the extent that this claim is based on police inaction concerning third-party vandalism, as noted above, government failure to protect against private party action does not make out a constitutional violation.  *DeShaney*, 489 U.S. at 195.  For all these reasons, Decarlo and McNerney's motion to dismiss claim ten is granted.  The claim against the Town is dismissed as well.

17

### J.   Claim Eleven – "Town Zoning Board Gross Negligence and Bad Faith"

The complaint next asserts a negligence and bad faith claim against the Town and the Estate of Steve Belasco.  As noted, Belasco is the former chairman of the ZBA.  Plaintiff alleges, in sum, that he applied for a zoning variance for real property in 2009, which application the ZBA granted in 2010.  Compl. ¶¶ 82-85.  Gordon and Pierot challenged the variance with an untimely appeal or petition of some sort.  *Id.* ¶ 87.  The ZBA entertained that challenge, even though it was untimely, and initially resolved the challenge in Plaintiff's favor in 2012.  *Id.* ¶ 84.  Chairman Belasco, not present when the variance was approved, thereafter campaigned through ZBA procedures to reopen the discussion.  *See id.* ¶¶ 96-100.  Ultimately, Belasco—whom Plaintiff contends was motivated by "political pressure"—prevailed, in that a majority of the reconstituted ZBA did not approve the variance.  *Id.* ¶ 106.  Thereafter, however, Article 78 proceedings were commenced and were resolved in favor of the variance, and so the ZBA ultimately granted it.  *See id.* ¶¶ 108-10.  Nevertheless, Plaintiff contends that Belasco and the Town were negligent, operated in bad faith, and intentionally, arbitrarily, and capriciously denied the variance application in the first instance.  *See id.* ¶¶ 109-10.

These allegations appear to assert a state law claim in tort, despite a passing reference to Section 1983.  The tort claim fails based on the face of the complaint for a number of reasons. First, to the extent that Plaintiff has sought to plead a negligence claim, the factual allegations do not establish a prima facie case of negligence (i.e., duty, breach, causation, and damages). Second, regardless of the particular type of tort claim asserted, Plaintiff lacks standing to assert the claim.  The Court again takes judicial notice of filings from the Article 78 proceeding, submitted here by the Town and the Estate of Belasco, which establish that M.M. Telcom Corp., not Plaintiff, owned the Elizabeth Street property and that the corporation, not Plaintiff, litigated

18

the Article 78 proceeding.  *See* Town & Belasco Mem. Ex. A, B.  Plaintiff therefore was not, and

still is not, the real party in interest.  Third, the allegations in claim eleven demonstrate that any

actions Belasco took, he took in his capacity as a quasi-judicial public officer.  Belasco and his

estate are therefore entitled to absolute immunity, a principle which bars a damages claim based

on the official actions taken, regardless of any political motive or negligence.  *Rottkamp v.*

*Young*, 15 N.Y.2d 831, 832 (1965) (affirming Appellate Division finding that building inspector

action, "in determining, albeit erroneously, that the plaintiffs were not entitled to a building

permit . . . was discretionary and quasi-judicial in character," thus precluding a suit for damages).

Fourth, because any claim against the Town would be vicarious in nature, immunity for Belasco

and his estate undercuts claim eleven as against the Town.  *Monell*, 436 U.S. at 690.  For all

these reasons, the Town and the Estate of Belasco's Rule 12(b)(6) motion to dismiss is granted,

and this claim is dismissed entirely.

### K.  Claim Twelve – "Subdivision Negligence"

The complaint next asserts a claim against the Town only, based on a 1994 subdivision of

two lots at Elizabeth Street.  Plaintiff alleges that the subdivision occurred without the required

due diligence and did not properly take into account "unique legal means of ingress and egress to

the property."  Compl. ¶¶ 113-14.

This appears to be a state law negligence claim.  In briefing, the Town correctly points

out the obvious—neither the operative statute of limitations, nor any other tort statute of

limitations, would permit a twenty-year-old claim such as this to proceed, absent tolling.  *See*

*Shovah v. Roman Catholic Diocese of Albany*, 745 F.3d 30, 37 (2d Cir. 2014) (citing New York

C.P.L.R. § 214(5) and confirming that three-year statute of limitations applies to negligence

claims).  There are no allegations in the complaint supporting tolling here, and consequently, the

Town's Rule 12(c) motion to dismiss claim twelve for untimeliness is granted.  The Court notes that this claim would fail for lack of standing even if it were not time-barred.

### L.  Claim Thirteen – "Unfair Property Tax Assessment"

Claim thirteen is asserted against the Town only, like claim twelve, and alleges that the ZBA's interim denial (before the Article 78 litigation) of the variance application stalled construction at Elizabeth Street and prevented Plaintiff from enjoying the property.  *See* Compl. ¶¶ 118-120.  Without articulating a particular legal theory for this claim, Plaintiff seeks a declaratory judgment abrogating the Town's tax assessment on the property for tax year 2012 to 2013, presumably because he was not able to enjoy full use of the property or planned renovations during that time.  *Id.* ¶ 121.  The Town does not move to dismiss this claim, but the claim is wholly derivative of claim twelve.  Claim thirteen also fails in its own right for lack of standing.  The Court therefore dismisses claim thirteen sua sponte.

### M. Claim Fourteen – "Changing School District"

Claim fourteen is asserted against the Town only and alleges that in or about 2011 or 2012, after the Elizabeth Street property was purchased, the Town moved the school district line a few feet south in a way that made the property ineligible for one particular school, the Edgemont School, but eligible for another.  *Id.* ¶ 125.  Plaintiff contends this was illogical, unreasonable, and intentionally malicious.  *Id.* ¶ 125.  Again without articulating a particular legal theory, Plaintiff requests a court order reversing the redistricting decision.

The Town has not moved to dismiss this claim either, but the Court dismisses it sua sponte.  This claim also fails for lack of standing, and it fails because Plaintiff has not stated any cognizable legal theory that would support the relief requested.

### N.  Claim Fifteen – "Filing a False Statement"

Claim fifteen is asserted against the Town, officer McNerney, and Deborah Salerno. Mark Gordon was named on this claim as well, until the voluntary dismissal order.  The claim challenges allegedly false statements made to the police and to prosecutors by Gordon and Salerno.  *Id.* ¶ 132.  Plaintiff alleges collaboration, conspiracy, and malicious prosecution.  *Id.* ¶¶ 129, 134.

This claim is duplicative.  It reasserts conspiracy, malicious prosecution, and perjury allegations made earlier in the complaint, in support of claims one and two.  As with those earlier claims, the allegations at claim fifteen are not viable in part because (a) the voluntary dismissal against Gordon and Pierot operates as res judicata, to the extent that conspiracy is asserted, and (b) a malicious prosecution claim does not lie against Deborah Salerno because there is no well-pleaded allegation that Salerno, a private citizen, initiated or continued Plaintiff's criminal prosecution or otherwise acted under color of state law.  *Manganiello*, 612 F.2d at 161; *San Filippo*, 737 F.2d at 256.  Claim fifteen also fails as against McNerney, because his direct participation in unconstitutional activity is not alleged.  Because the Town's liability could only be vicarious, the claim fails as against the Town in turn.  Claim fifteen is therefore dismissed in its entirety.

### O.  Claim Sixteen – "False Policies and Practices"

Finally, claim sixteen asserts a catch-all, *Monell*-type allegation against the Town:  the Town "set policies and practices which proximate causes of constitutional injury to Plaintiff" [sic].  Compl. ¶ 136.  Allegations in support of this claim are entirely conclusory, however. Plaintiff does not identify with any specificity the actual policies or practices of concern. Moreover, the specific grievances listed in support of this claim (e.g., permissible vandalism,

trespass) are the same grievances listed elsewhere, in support of claims against individuals, and

the Court already has held that those claims do not survive Rules 12(b)(6) and 12(c). Thus,

although the Town has not moved to dismiss this claim, the Court dismisses it sua sponte.

## IV. CONCLUSION

For the reasons stated above, the pending motions to dismiss the amended complaint are

GRANTED in part, and DENIED in part. The sole remaining defendants (the Town, Herighty,

and Knoesel) already have filed answers to the sole remaining claims in the amended complaint

(claims one and two), and therefore a district court status conference shall be held on March 25,

2015 at 11:15 a.m., after which the matter shall be referred to a magistrate judge for discovery.

The parties shall bring a completed case management plan to the conference.

The Clerk of Court is respectfully requested to terminate the motions at docket numbers

68, 71, 74, 89, and 121, and to terminate the action as against *all defendants except* the Town of

Greenburgh, John Herighty, and Keira Knoesel.


Dated: February 23, 2015                              SO ORDERED:
      White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge